JOHN SCOTT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10418.   Promulgated April 7, 1927.

Profits determined on a series of real estate transactions in the years 1920, 1921, and 1922.

*John Scott* pro se.
*A. R. Marrs, Esq.,* for the respondent.

This is a proceeding to redetermine deficiencies in income tax for the calendar years 1920, 1921, and 1922 determined by the Commissioner in the amount of $10,964.31.

### FINDINGS OF FACT.

The petitioner is a resident of Miami, Fla.   During the years here under consideration he was engaged in buying and selling real estate.   All of the properties herein referred to were acquired subsequent to March 1, 1913.   Items in which error is assigned are numerous and for convenience will be referred to by their numbers as they appear in the petition.   Each of them relates to the amount of profit made in the several sales or exchanges of property listed below, as follows:

### CALENDAR YEAR 1920.

*Item 5.* The cost of the property to the petitioner was $341.   The selling price was $750.   The profit realized on the transaction was $409.

*Item 6.* The cost of the property to the petitioner was $787.50. The selling price was $2,000.   The profit realized on the transaction was $1,212.50.

*Item 13.* The petitioner transferred a parcel of land in part payment for an apartment house.   Petitioner assumed the mortgage on the apartment house and paid the balance of the purchase price in cash.   The agreed value at which the land was included in the transaction was $3,000.   The cost of this land to petitioner was $1,300. The profit realized by petitioner on the transaction was $1,700.

*Items 17, 18, 19, 20, 26.* The five lots represented by these transactions, together with one other lot sold in 1921 which is the lot involved in item 25 for the year 1921, were originally acquired by the petitioner in two parcels of land, more specifically described as the south 100 feet of lot 9, block 97 N., Miami, and lots 5 and 6 of subdivision 16, block 86 N., and lot 9 in block 97 N.   For the first parcel (south 100 feet of lot 9), the petitioner paid $6,000, of which $2,000

was cash upon execution of the sale agreement and the balance of $4,000 was represented by a promissory note due April 1, 1920. This parcel was subdivided into four lots. For the second parcel, the petitioner gave $500 cash, 20 acres of land, and assumed an indebtedness thereon of $4,250. This second parcel was divided and sold by the petitioner in two lots. Six lots were carved out of the two parcels. Of these six lots, five were sold in 1920 and one in 1921, at the price of $4,000 each. Respondent determined the cost of four of these lots (sold in 1920) to be $1,200.67 each and of the fifth lot (sold in 1920) to be $1,196.17. Accordingly, he determined a profit of $2,799.33 on the sale of each of the four lots sold in 1920, and a profit of $2,803.83 on the sale of the fifth lot sold in 1920.

*Item 24.* The cost of the property to the petitioner was $497.72. The selling price was $3,000. The profit realized on the transaction was $2,502.28.

*Item 25.* Petitioner purchased six lots at a cost of $6,000 less a brokerage commission of $600 allowed by the vendor, or a net cost to the petitioner of $5,400. The lot here in question was one of these lots and was sold in 1920 for $1,000. We find the cost to the petitioner of the lot sold was $900, and that a profit of $100 was realized on the sale.

*Item 29.* In the taxable year, the petitioner gave to a negro, who had served him for many years, a lot which had cost the petitioner $400. The transfer was a gift and no profit was realized by the petitioner thereon.

*Item 30.* The cost of the property to the petitioner was $250. The selling price was $500. The profit realized by the petitioner on the transaction was $250.

*Item 32.* In the taxable year the petitioner desired to convey a lot of land to his wife. To effectuate this he deeded the lot to one Charles Allen, who in turn conveyed the lot to the petitioner's wife. No consideration was received or paid in either transaction. No profit was realized by the petitioner.

*Item 33.* The petitioner and one Inglis each owned a one-half interest in a lot which had cost them $3,000. The lot was sold by them in the taxable year for $4,000. One half of the realized profit belonged to the petitioner. His profit was $500.

*Item 34.* The cost of the property to the petitioner was $610. The selling price was $900. The petitioner's profit on the transaction was $290.

CALENDAR YEAR 1921.

*Item 1.* The cost of the property to the petitioner was $1,800. The selling price was $4,000. The petitioner's profit on the transaction was $2,200.

*Item 3.* The cost of the property to the petitioner was $901.50. The selling price was $1,250. The petitioner's profit on the transaction was $348.50.

*Item 20.* The cost of the property to the petitioner was $71.43 The selling price was $1,000. The petitioner's profit on the transaction was $928.57.

*Item 24.* The cost of the property to the petitioner was $3,108 The selling price was $6,500. The petitioner's profit on the transaction was $3,392.

*Item 25.* The facts relative to this transaction are fully set out under *Items* 17, 18, 19, 20, 26, for the year 1920. This lot was the sixth and last lot to be sold. It was sold in 1921.

*Item 33.* The cost of the property to the petitioner was $7,032.20 The selling price was $11,500. The petitioner's profit on the transaction was $4,467.80.

*Item 37.* The cost of the property to the petitioner was $1,550 The selling price was $2,500. The petitioner's profit on the transaction was $950.

*Item 39.* The cost of the property to the petitioner was $187.50 The selling price was $500. The petitioner's profit on the transaction was $312.50.

*Item 40.* This transaction was an accommodation transfer from which no profit accrued to the petitioner. One Kohler desired to transfer a parcel of property to his wife, Laura Kohler. To effectuate this, Kohler and his wife conveyed the property to the petitioner, who in turn conveyed it to Laura Kohler. No consideration was received or paid in either conveyance. No profit was realized.

### CALENDAR YEAR 1922.

*Item 1.* The cost of the property to the petitioner was $1,000. The selling price was $2,000. The petitioner's profit on the transaction was $1,000.

*Item 2.* The cost to the petitioner of the property was $1,762.50. The selling price was $2,250. The petitioner's profit on this transaction was $487.50.

*Item 3.* The facts relative to this transaction are fully set out under *Item 25*, for the year 1920. The lot here in question is one of the six lots purchased for $5,400. It was sold in the year 1922 for $1,500. Its cost was $900. The profit on this transaction was $600.

*Item 8.* The selling price of the lot in question under this item was $1,200. The cost price was not shown. The profit on this transaction was $1,200.

*Item 10.* The cost to the petitioner of the property sold was $187.50. The selling price was $500. The petitioner's profit on the transaction was $312.50.

*Item 12.* The cost to the petitioner of the property sold was $200. The selling price was $500. The petitioner's profit on the transaction was $300.

*Item 14.* The cost to the petitioner of the property sold was $500. The selling price was $2,000. The petitioner's profit on the transaction was $1,500.

*Item 16.* The lot involved in this transaction was acquired by the petitioner in the spring of 1922, at a cost of $6,500, of which $4,000 was paid in cash, the petitioner assuming a mortgage of $2,500. In the transaction under consideration the petitioner conveyed this lot at an agreed value of $6,500, and paid cash in the amount of $19,000, in exchange for another lot, lot 8, block 79 N., in Miami, the purchaser assuming the mortgage of $2,500. The petitioner's equity in the lot traded in was $4,000. The respondent fixed the cost of petitioner's equity in the lot at $3,000; and upon the basis of a selling price of $4,000, held that the profit on the transaction was $1,000. We find that no profit was made on this transaction.

*Item 21.* In the year 1922, a member of petitioner's family experienced marital difficulties which made conveyance difficult. As an expedient, petitioner took title to the property in question as an accommodating conduit of title. No profit accrued to the petitioner on this transaction.

*Item 22.* The cost to the petitioner of the property sold was $71.43. The selling price was $1,000. The petitioner's profit on the transaction was $928.57.

*Item 28.* The cost to the petitioner of the property sold was $882.25. The selling price was $6,000. The petitioner's profit was $5,117.75.

*Item 37.* The petitioner bid in a lot at a tax sale for approximately $50, and received a certificate which in process of time might ripen into a title. He traded this certificate in the taxable year for some rubber stock of a value no greater than the value of his certificate. No profit resulted from the transaction.

OPINION.

Korner, *Chairman:* Certain of the numbered items set out above in the findings need a word of explanation.

CALENDAR YEAR 1920.

*Item 13.* The petitioner admits that the land in question was acquired by him at a cost of $1,300, and that it was turned over in

payment for an apartment house at a value of $3,000. He contends, however, that the transaction involved simply an exchange of property for property, giving rise to no taxable income; and that any profit arising out of the transaction would not be realized until a sale or other disposition of the apartment house.

The petitioner's contention that the profit on the exchange is not returnable as income, for income tax purposes, until the apartment house is sold or otherwise disposed of, is without foundation under the statute. Section 202 (b) of the Revenue Act of 1918 prescribes the basis for determining the gain or loss upon an exchange of property for other property; and the gain, determined in accordance with those provisions of the statute, must be included, under the provisions of section 213·(a) of the same Act, in gross income, for the purposes of the tax. The respondent's computation of the gain arising out of the transaction, and his action in including such gain as income for the year 1920, must be approved.

*Items 17, 18, ·19, 20, 26.* The selling price of the five lots included in these transactions is not in dispute. The petitioner contends that the cost of four of the lots was $3,034 each; that the cost of the fifth lot was $3,029.50; that he realized a profit of only $966 on the sale of each of the four first mentioned; and that the profit on the sale of the fifth lot was but $970.50. The issue is entirely as to the cost of the five lots.

It is clear from the evidence, that the original cost to the petitioner of one parcel of land, which was subdivided into four lots, was $6,000. The original cost of the other parcel can not be determined, the evidence simply showing that the petitioner gave for it $500 cash and 20 acres of land, and assumed the indebtedness thereon of $4,250. Our inability to determine the cost of this last parcel is due to the fact that we have not been advised as to the value, at the time of the exchange, of the 20 acres of land which was a part of the consideration. The respondent has held that the total cost of the five lots sold in 1920 was $5,998.85, and that the cost of the other lot sold in 1921 was $1,966.67, a total cost for the two parcels of land of $7,965.52, which is $2,784.48 less than the actual cash paid and the amount of the indebtedness assumed by the petitioner, to wit: $10,750. It would appear that the petitioner is entitled to have the gain derived from the sale of the six lots computed upon the basis of a gross cost of at least $10,750.

The petitioner contends that the total cost of the five lots sold in 1920 was $15,165.50, and that the cost of the other lot sold ·in 1921 was $3,034, a total cost of $18,199.50; but this has not been proven. It includes the purported original cost, the amount of which we are unable to determine for reasons heretofore expressed, and an additional sum to cover the cost of street lights, paving, sewer, and

brokerage fees which the petitioner, on the witness stand, estimated to be $800 per lot. Whether the petitioner actually made any improvements, such as installing street lights, paving, and sewer, or incurred any expenses in respect thereof, prior to, during, or subsequent to 1920, has not been shown. Petitioner simply testified that the costs for which he is contending include an estimated amount to cover the cost of such improvements. For aught we know, such improvements may not have been made, nor any expense incident thereto actually incurred.

However, we are of the opinion that the petitioner is entitled to the relief for which he prays, to the extent that the profit which the respondent has determined upon the sale of each of the lots under consideration, exceeds the profit determined upon the basis of the minimum gross cost of $10,750. The four lots carved out of south 100 feet of lot 9, block 97 N., cost $6,000, or $1,500 each; and the two lots carved out of lots 5 and 6 of subdivision 16, block 86 N., cost at least $4,750, or $2,375 each. Since we do not know out of which of the two parcels· of land specific lots were sold we must leave the determination of the gain to be made under Rule 50. .

## Calendar Year 1921.

*Item 33.* Petitioner contends that this transaction was one in which he had only a half interest with another and that only one-half of the profit was realized by him. His testimony on this item was vague and uncertain. He testified that he did not handle the matter personally and that he knows nothing about the details of the transaction, either as to cost price or selling price except as he had been informed by another. No documentary evidence was introduced. Petitioner admits that he knows little or nothing about it. The determination of the respondent will not be disturbed under these circumstances.

## Calendar Year 1922.

*Item 1.* The contention of the petitioner here is similar to that as to *Items 17, 18, 19, 20, 26* in the year 1920. He paid $2,000 for an equity in a lot. He traded this equity for a lot in Miami and an equity in a house in Miami. He later sold the equity in the Miami house for $2,000. He contends that no profit arises from an exchange of property for property. This is error, sec. 202(c)(1), Revenue Act of 1921. He has failed to show the value of the lot and equity acquired in Miami and in the absence of such showing, the determination of the respondent will not be disturbed.

*Item 8.* At the hearing, the petitioner testified that he was unable to give any facts relating to this transaction. He was not able to

show the cost price of the lot or that it cost him anything. Under these circumstances the respondent's determination will not be disturbed.

*Item 10.* At the hearing the petitioner abandoned his contention as to this item. The facts have accordingly been found as determined by the respondent.

*Item 14.* At the hearing the petitioner abandoned his contention as to this item. The facts have accordingly been found as determined by the respondent.

*Item 16.* The evidence clearly establishes the facts that the cost to the petitioner of the lot in question was $6,500; and that it was included in the exchange at a value of $6,500. The facts concerning this transaction were related on the witness stand by both parties involved in the exchange; and we are satisfied from the showing made that the petitioner realized no gain in this transaction. The respondent's action in determining a gain of $1,000 on the exchange is in error.

*Items 22 and 28.* The petitioner purchased two lots constituting a triangle of land. The first of these two lots he subdivided into five small parcels and sold them for $1,000. The other lot he retained and later in the year sold for $6,000. The profit depends on the cost price. The testimony was so vague and obscure that we have been unable to ascertain the actual cost price attributable to the respective parcels. It appears that the petitioner arbitrarily allocated a cost price to each lot, but from the testimony this appears to have been no more than an estimate. In the absence of competent evidence fixing the cost of the property, we affirm the determination of the respondent and find the cost to be as determined by him.

*Item 37.* From the testimony of the witnesses, it appears that the parties to this transaction, in effect, swapped two bladeless knives, sight unseen. The tax certificate held by the petitioner had a high speculative value of not more than $50. The rubber stock was a commodity of about equal speculative value. It had no known value then and soon proved to be worthless. The owner of the stock told the petitioner he could get about $50 for it. Each seemed to feel that he had so little of value that no trade could result in the receipt of something of less value. As the petitioner expressed it: " We just made a quick trade." It is apparent that to the minds of the parties to the trade the affair was *de minimis*, and we concur in that view of it.

The other adjustments made by the respondent going to make up the deficiency in question were not assigned as error by the petitioner.

In his statutory notice of determination, the Commissioner advised the petitioner of an overassessment of $23,239.73 for the year 1919,

That matter is not before us and no comment is made with respect thereto. *R. P. Hazzard Co.*, 4 B. T. A. 150; *Cornelius Cotton Mills*, 4 B. T. A. 255.

> *Judgment will be entered on 20 days' notice, under Rule 50.*